FILED
2015 NOV -4  PM 3:48

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

ETS-LINDGREN, INC.,
        Plaintiff,

-vs-

MVG, INC.,
        Defendant.

CAUSE NO.:
A-15-CA-00456-SS

# ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant MVG, Inc.'s Motion Under Fed. R. Civ. P. 12(b)(2) to Dismiss for Lack of Personal Jurisdiction and Brief in Support [#22], Plaintiff ETS-Lindgren Inc.'s Response [#24] thereto, Defendant's Amended Reply [#26] thereto, Plaintiff's Sur-Reply [#27] thereto, and Defendant's Objection to ETS's Unauthorized Sur-Reply [#28].[1]  Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

## Background

This is a personal jurisdiction dispute in a patent infringement action.  Plaintiff ETS-Lindgren, Inc. (ETS) is a manufacturer of electromagnetic, magnetic, and acoustic energy measurement systems used in industrial and commercial markets, including a type of radar and antenna measurement system generically known as a "MIMO" system.  ETS holds U.S. Patent No. 8,331,869 (the '869 Patent), entitled "Systems and Methods for Over the Air Performance

---

[1] Under the local rules of the Western District of Texas, a litigant may not file a sur-reply without leave of court. See Local Rule CV-7(f)(1).  ETS failed to seek leave of court before filing its sur-reply.  As consideration of the sur-reply does not affect the Court's ultimate disposition of this motion, MVG's objection to the sur-reply is OVERRULED.

Testing of Wireless Devices with Multiple Antennas." ETS claims Defendant MVG, Inc. (MVG)'s competing "STAR-MIMO" system infringes the '869 Patent, and asserts MVG is liable for direct, contributory, and induced infringement.

ETS is an Illinois corporation "with a principal place of business" in Cedar Park, Texas. Resp. [#24] at 1; *see* Compl. [#1] ¶ 1 (alleging ETS "ha[s] a place of business" in Cedar Park). MVG is incorporated in Delaware and has its principal place of business in Kennesaw, Georgia. Mot. Dismiss [#22] ¶ 8; *see* Resp. [#24] at 2. According to ETS's complaint, MVG is subject to personal jurisdiction in the Western District of Texas "because it conducts business in this state and this judicial district, including at least selling or offering for sale the devices accused of infringement." Compl. [#1] ¶ 5.

ETS initiated this action by filing its complaint on May 28, 2015. *See id.* at 1. After the Court granted the parties' agreed motion for extension of time for MVG to respond to the complaint, *see* Order of Aug. 18, 2015 [#18], on September 17, 2015, MVG filed the instant motion to dismiss. *See* Mot. Dismiss [#22]. The motion is now ripe for decision.

## Analysis

### I.   Legal Standard

The Federal Rules of Civil Procedure allow a defendant to assert lack of personal jurisdiction as a defense to suit. FED. R. CIV. P. 12(b)(2). In a patent infringement action, Federal Circuit law applies to the jurisdictional analysis, as "the jurisdictional issue is intimately involved with the substance of the patent laws." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009) (quoting *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008)).

To determine whether a federal district court has personal jurisdiction over a nonresident defendant, the district court considers first whether exercising jurisdiction over the defendant comports with due process. *See id.*; *Religious Tech. Ctr. v Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). If the requirements of due process are satisfied, the court then determines whether the exercise of jurisdiction is authorized by the jurisdictional "long-arm" statute of the state in which the court sits. *See Autogenomics*, 566 F.3d at 1016. Because the Texas long-arm statute has been interpreted as extending to the limit of due process, the two inquiries are the same for district courts in Texas. *Liebreich*, 339 F.3d at 373; *see* TEX. CIV. PRAC. & REM. CODE §§ 17.001–.093.

"The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). One requirement of due process is that the nonresident defendant be properly subject to the personal jurisdiction of the court in which the defendant is sued. *Id.* The United States Supreme Court has articulated a two-pronged test to determine whether a federal court may properly exercise jurisdiction over a nonresident defendant: (1) the nonresident must have minimum contacts with the forum state, and (2) subjecting the nonresident to jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

A defendant's "minimum contacts" may give rise to either specific personal jurisdiction or general personal jurisdiction, depending on the nature of the suit and the defendant's relationship to the forum state. *See Autogenomics*, 566 F.3d at 1017. A court may exercise specific jurisdiction when (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) the

controversy arises out of or is related to the defendant's contacts with the forum state; and (3) the assertion of personal jurisdiction is reasonable and fair. *Id.* at 1018 (citation omitted). When the controversy is not related to the defendant's contacts with the forum state, a court may exercise general jurisdiction over the defendant if the defendant has engaged in "continuous and systematic contacts" in the forum. *Id.* Of course, if a defendant satisfies neither of these tests, the exercise of personal jurisdiction is not proper. *Int'l Shoe*, 326 U.S. at 316.

The plaintiff has the burden of making a prima facie case by showing a defendant has sufficient "minimum contacts" with the forum state to justify the state's exercise of either specific or general jurisdiction. *See Autogenomics*, 566 F.3d at 1018. If the plaintiff does so, the burden shifts to the defendant to show such an exercise offends due process because it is not consistent with traditional notions of fair play and substantial justice. *Id.* Finally, when a court rules on a 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept the non-moving party's jurisdictional allegations as true and resolve all factual disputes in its favor. *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010).

## II.     Application

MVG's motion requests dismissal of this suit for lack of personal jurisdiction. Alternatively, MVG asks the action be transferred to the District Court for the Northern District of Georgia, where MVG and ETS are currently litigating *Microwave Vision, S.A. et al. v. ESCO Technologies et al.*, Civil Action No. 1:14-cv-01153 (N.D. Ga. filed Apr. 18, 2014) (the Pending Action), another patent infringement suit. In its response, ETS requests jurisdictional discovery, and alternatively, asks the Court to deny the motion to dismiss and transfer the case to the Northern District of Georgia. Resp. [#24] at 1. As set forth below, the Court finds it appropriate

to transfer this action to the Northern District of Georgia, Atlanta Division, as alternatively requested by both parties.

**A.     MVG's Argument**

According to MVG, which has attached the sworn declaration of John Estrada, its Chief Executive Officer, in support of its jurisdictional allegations, MVG has no place of business, office, employees, owners, officers, or directors located in Texas. *See* Mot. Dismiss [#22-1] Ex. A (Estrada Decl.) ¶¶ 3–4. While MVG acknowledges it does conduct some sales in Texas, MVG alleges those sales are not "so substantial as to render this district a home for MVG," as over the past decade, its sales in Texas have averaged approximately 3.5% of MVG's total sales nationwide. *Id.* ¶ 5. Further, MVG alleges it has never sold or offered to sell the accused product, the STAR-MIMO system, to any customer within Texas. *Id.* ¶¶ 7–8. While MVG does have a website accessible to the public anywhere in the United States, MVG states its website is informational only and does not offer its products for sale. *See id.* ¶ 11; Mot. Dismiss [#22] ¶ 11. Given all of the above, MVG argues the exercise of either general or specific personal jurisdiction over MVG in this district would be improper.

**B.     ETS's Response**

ETS responds that the Estrada declaration and MVG's jurisdictional allegations conflict with publicly available information, and thus, jurisdictional discovery is necessary to ascertain whether the exercise of specific jurisdiction over MVG in this district is warranted. Specifically, ETS argues MVG's corporate parent—Microwave Vision Group SA (MVGSA), a French holding company—owns several subsidiaries with many Texas customers, and suggests those subsidiaries may have infringed while acting as MVG's agents. *See* Resp. [#24] at 2–3, 11 ("[J]urisdictional discovery may very well reveal that the other Microwave Vision Group

companies, acting as authorized agents for MVG, have been involved in the sales and marketing of the STAR-MIMO system in Texas."). In support of these allegations, ETS points to a public due diligence and valuation document filed after MVGSA acquired both MVG[2] and another company called Orbit/FR. See Resp. [#24-2] Ex. 1 (Valuation Doc.). The document states that following the acquisition of MVG and Orbit/FR, "[MVGSA] implemented a new structure which revolved around pooling of transversal functions, the realization of industrial synergies, the centralization of sales and marketing activities, and a global R&D management." Id. at 4. ETS emphasizes the "centralization of sales and marketing activities" language.

ETS further notes MVG admits it offered to sell its accused STAR-MIMO system to a customer in Irving, Texas just six days before the '869 Patent issued, and contends that offer may be relevant to jurisdiction, as if ETS conducted pre-issuance sales and marketing in Texas, those activities might "result in or enhance future sales." Resp. [#24] at 4, 8. Finally, ETS claims MVG's website is more than a mere advertisement, as Texas customers may request price quotes and additional information about the STAR-MIMO system through the website, id. at 9, and states a research paper published in a March 2015 journal indicates that "MVG-Orbit/FR" employs at least one engineer who lives in Sunnyvale, Texas, id. at 11–12.

C.  **MVG's Reply**

In its reply, MVG argues ETS's jurisdictional allegations are purely speculative and lack both particularity and a basis in the record. Additionally, MVG submits a supplemental declaration from John Estrada which responds to ETS's claims in support of its request for jurisdictional discovery. In response to the agency argument, Estrada testifies "[o]nly MVG" would be "able to offer to sell or sell STAR-MIMO systems in the state of Texas" and states

---

[2] MVG was formerly known as "Satimo USA, Inc.," and changed its corporate name after being acquired by MVGSA. See Resp. [#24] at 2.

MVG, its agents, distributors, and sales representatives have never, within the term of the '869 Patent, sold or offered to sell a STAR-MIMO system either to a Texas customer or for installation in Texas. Reply [#25] Ex. 1 (Suppl. Estrada Decl.) ¶ 3.[3] As for ETS's allegations regarding the MVG website, Estrada states the site does not invite potential customers to request price quotes, and in any event, no prospective customer located in Texas has ever sent an informational request regarding the STAR-MIMO system via the website. *Id.* ¶¶ 4–6. Estrada also explains the Sunnyvale, Texas engineer is employed by Orbit/FR, not MVG. *Id.* ¶ 2. Finally, MVG argues the offer to sell made prior to issuance of the '869 Patent has no relevance to the jurisdictional question because pre-issuance conduct cannot support the assertion of jurisdiction. Mot. Dismiss [#22-1] ¶ 27; Am. Reply [#26] at 4–5.

D.   Ruling

    1.   **ETS has failed to establish a prima facie case of jurisdiction**

First, the Court finds ETS has failed to establish a prima facie case that either general or specific jurisdiction is proper. ETS all but concedes that failure, as its pleadings focus near-exclusively on the propriety of jurisdictional discovery, do not respond to MVG's arguments related to general jurisdiction, and contend the first—but not the second—prong of the specific jurisdiction test is satisfied on the present record. Concerning general jurisdiction, it is clear ETS has failed to show MVG has "affiliations with [Texas] . . . so continuous and systematic as to render [it] essentially at home" in this forum, and as such, general jurisdiction will not lie. *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

---

[3] MVG filed both a reply and an amended reply. *See* Reply [#25]; Am. Reply [#26]. It appears that while Estrada's supplemental declaration was attached to the reply, *see* Suppl. Estrada Decl., Estrada's original declaration, not the supplemental declaration, was mistakenly attached to the amended reply, *see* Am. Reply. [#26-1] Ex. 1. Citations to the supplemental declaration are to the exhibit attached to the reply.

Case 1:15-cv-03859-AT   Document 29   Filed 11/04/15   Page 8 of 12

Nor has ETS established the propriety of specific jurisdiction, as ETS has failed to adduce any evidence MVG purposely directed any activities toward Texas, purposely availed itself of this forum's privileges, or that any such contacts between MVG and Texas gave rise to ETS's infringement claim.[4] *See Autogenomics*, 566 F.3d at 1018 (specific jurisdiction lies where (1) the defendant has minimum contacts with the forum, (2) the plaintiff's cause of action arise from the defendant's contacts with the forum, and (3) the exercise of jurisdiction is fair and reasonable). To the extent ETS argues MVG's website alone supports the assertion of specific jurisdiction, that argument is rejected. Even if the website alone constituted purposeful direction of activity toward Texas—a dubious proposition, given no sales of the STAR-MIMO system are conducted through the site and in light of Estrada's declaration no prospective Texas customers used the site's information-request form—ETS has made no attempt to show its claims arise out of or relate to those alleged contacts. *See Applied Food Scis., Inc. v. New Star 21, Inc.*, Civil Action No. W-07-CA-359, 2009 WL 9120113, at *4 (N.D. Tex. Jan. 23, 2009) (finding even where website fell "at the more interactive end" of the *Zippo* internet-contacts scale[5] "due to the possibility of actual sales occurring through the use of PayPal," the website did not support specific jurisdiction because the plaintiffs failed to show that "any of the interactivity was directed toward or accessed by anyone in Texas").

---

[4] In a portion of its brief arguing for jurisdictional discovery, ETS states "it is unclear" whether the pre-issuance offer to sell MVG admits it made to the Irving, Texas customer "was still open for [the customer's] acceptance" on the date the '869 Patent issued. *See* Resp. [#24] at 10–11. ETS has not argued that an offer, extended prior to issuance of a patent, constitutes infringement in and of itself under 35 U.S.C. § 371(a). *See id.* at 11 ("Accordingly, a relevant inquiry to jurisdiction is whether this offer to sell would have resulted in a binding agreement upon acceptance by [the customer] on or after [the date the ''869 Patent issued]."); Sur-Reply [#27] at 7–8 (addressing only "post-issuance offers to sell"). Consequently, the Court declines to address the question, raised by MVG's citation to *Beloit Corp. v. Valmet Corp.*, No. 96-C-0087, 1997 WL 745040 (W.D. Wis. July 15, 1997), of whether a pre-issuance offer which remains open on the date a patent is issued can constitute infringement as a matter of law.

[5] *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Penn. 1997) (articulating the tripartite sliding scale of website interactivity used to ascertain "the nature and quality of commercial activity that an entity conducts over the Internet" for purposes of determining personal jurisdiction).

## 2. Jurisdictional discovery will not be permitted

Accordingly, the Court turns to the jurisdictional discovery issue. Issues concerning jurisdictional discovery, which are not unique to patent law, are governed by the law of the regional circuit. *Autogenomics*, 566 F.3d at 1021–22. As with all discovery matters, the question whether to permit jurisdictional discovery is committed to the district court's discretion. *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982). "As the party opposing dismissal and requesting discovery, the plaintiffs bear the burden of demonstrating the necessity of discovery." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014) (quoting *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013)). A plaintiff seeking jurisdictional discovery is expected to identify with particularity the discovery sought, explain what information it expects to obtain, and explain how that information would support the assertion of personal jurisdiction; failure to do so warrants denial of leave to conduct the discovery. *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)); *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 672 (S.D. Tex. 2014) (citations omitted).

The Court declines to permit jurisdictional discovery in this case. ETS "seeks discovery of MVG's activities in Texas and this District, including those of any agents, the Microwave Vision Group or its customers, that are related to the sale, offers to sell, use, manufacture or importation of the STAR-MIMO system." Resp. [#24] at 13. This casts too wide and vague a net. *See New World Int'l, Inc. v. Ford Global Techs., LLC*, No. 3:15-CV-01121-M, 2015 WL 6549137, at *7 (N.D. Tex. Oct. 28, 2015) (slip op.) (declining to permit jurisdictional discovery where the plaintiffs claimed discovery would reveal "[the defendant's] contacts with the State of Texas including the technology that [the defendant] has licensed and/or sold"). Additionally, all

but one of ETS's arguments regarding the alleged gaps in jurisdictionally relevant information are directly controverted by Estrada's two sworn declarations.  *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 856–57 (5th Cir. 2000) (holding district court did not abuse its discretion to deny jurisdictional discovery on alter ego theory in light of three declarations submitted by defendants controverting same); *Autogenomics*, 566 F.3d at 1023 (stating a showing that further discovery would elucidate the facts necessary to prove personal jurisdiction "is especially important where, as here, the defendant enters declarations into evidence specifically denying certain jurisdictional allegations"); *Sur-Tec, Inc. v. CovertTrack Grp., Inc.*, No. 13-2218-CM, 2014 WL 1304909, at *3 (D. Kan. Apr. 1, 2014) ("Because the declarations cure the alleged deficiencies, and because plaintiff brings forth no additional supported allegations, jurisdictional discovery is not appropriate[.]"); *see also Alphonse v. Arch Bay Holdings, L.L.C.*, —F. App'x—, 2015 WL 4187585, at *3 (5th Cir. 2015) (finding, in diversity case, district court did not err in relying on defendant's declarations to disallow additional jurisdictional discovery).

In its only argument not resolved by Estrada's declarations, ETS contends MVG's pre-issuance offer to sell in Texas is relevant to jurisdiction because it "may [have] result[ed] in or enhance[d] future sales." Resp. [#24] at 7–8 (quoting *Genetic Implant Sys. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)). *Core-Vent* is readily distinguishable from this case. The *Core-Vent* plaintiff, a forum resident, sued Core-Vent, the out-of-state patentee, seeking a declaratory judgment of non-infringement, and Core-Vent moved to dismiss for lack of personal jurisdiction. *Core-Vent*, 123 F.3d at 1457. Core-Vent sold its products directly in the forum state prior to issuance of its patent. *Id.* After the patent issued, however, Core-Vent granted exclusive marketing and distribution rights to Dentsply, which continued to sell Core-Vent's

products in the forum state. *Id.* A few years later, the plaintiff filed suit after Core-Vent sent it several cease-and-desist letters threatening infringement litigation. *Id.* In finding the assertion of personal jurisdiction over Core-Vent was proper, the Federal Circuit explained while Core-Vent's lengthy history of marketing in the forum did have some relevance, the "most significant" factor was Dentsply's continued intra-forum sale of Core-Vent's products. *Id.* at 1458. The court analogized the exclusive marketing and distribution agreement between Core-Vent and Dentsply to a license; like a license, the agreement surrendered Core-Vent's right to exclude under its patent. *Id.* Because "infringement letters sent into a forum state accompanied by the grant of a license to an in-state competitor . . . [a]re sufficient to justify assertion of personal jurisdiction against an out-of-state patentee," so too, the court concluded, was Core-Vent's agreement with Dentsply accompanied by the infringement letters. *Id.* Here, as no such circumstances obtain, *Core-Vent* provides minimal, if any, support for ETS's request for jurisdictional discovery.

ETS's request for jurisdictional discovery is denied.

3. **Transfer is appropriate**

Pursuant to 28 U.S.C. § 1406(a), a district court lacking personal jurisdiction may, in lieu of dismissing the case without prejudice, transfer the action to "any district or division where it could have been brought" if the court finds transfer "is in the interest of justice." *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013). Here, both parties agree that transferring this case to the Northern District of Georgia, Atlanta Division, where the Pending Action is being litigated between these and other parties and where MVG has its principal place of business, would be proper. *See* Mot. Dismiss [#22] at 11; Resp. [#24] at 15. Under the circumstances, transfer rather than dismissal would save the parties the time and expense of

beginning again from scratch, avoiding delay and wasteful duplication of effort. As such, the Court finds transfer to the Northern District of Georgia, Atlanta Division, is in the interest of justice.

### Conclusion

Accordingly:

IT IS ORDERED that Defendant MVG, Inc.'s Motion Under Fed. R. Civ. P. 12(b)(2) to Dismiss for Lack of Personal Jurisdiction and Brief in Support [#22] is DENIED as to its request for dismissal and GRANTED as to its alternative request for transfer; and

IT IS FINALLY ORDERED that this case is TRANSFERRED to the United States District Court for the Northern District of Georgia, Atlanta Division.

SIGNED this the 4th day of November 2015.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE